UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JELANI J. JENNINGS, individually, and on behalf of others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>NORTHROP GRUMMAN CORPORATION, et al.,<br><br>　　　　　　Defendants. | Case No. CV 24-7212 FMO (Ex)<br><br>**ORDER RE: PENDING MOTION** |

　　　Having reviewed and considered all the briefing filed with respect to Jelani J. Jennings's ("plaintiff") Motion to Remand Case to Superior Court, (Dkt. 36, "Motion"),[1] the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78; L. R. 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

---

　　　[1] Defendants have also filed a pending Motion to Compel Arbitration. (See Dkt. 37). "The Court, however, is without authority to consider Plaintiff's motion to compel arbitration without an independent basis of subject matter jurisdiction," Shrivastava v. Fry's Elecs., Inc., 2011 WL 3812593, *3 n. 2 (N.D. Cal. 2011), and must therefore first address the jurisdictional argument presented in the instant Motion. See Geographic Expeditions, Inc. v. Estate of Lhotka, 599 F.3d 1102, 1106 (9th Cir. 2010) (explaining that "a federal court has jurisdiction over a petition to compel arbitration if the federal court would have jurisdiction over the underlying substantive dispute").

**BACKGROUND**

On June 26, 2024, plaintiff filed a putative class action in state court against Northrop Grumman Corporation ("Northrop Grumman") and Gary Stankovich, (collectively, "defendants"), asserting claims for: (1) failure to pay overtime wages; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to pay all wages due upon termination; (6) failure to provide accurate wage statements; (7) failure to timely pay wages during employment; (8) failure to indemnify; (9) violation of Cal. Labor Code § 227.3; and (10) violation of California's Unfair Competition Law, Cal. Cal. Bus. & Prof. Code § 17200, et seq. (See Dkt. 1-5, Complaint ("Compl.") at ¶¶ 1 & 36-105). Plaintiff seeks to represent a class comprised of "all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class." (Id. at ¶ 26).

On August 23, 2024, Northrop Grumman removed the action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (See Dkt. 1, Notice of Removal ("NOR") at 1). Now pending is plaintiff's motion to remand. (See Dkt. 36, Motion).

**LEGAL STANDARD**

Removal of a civil action from the state court where it was filed is proper if the action could have originally been brought in federal court. See 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court[.]"). "CAFA provides expanded original diversity jurisdiction for class actions meeting the amount in controversy and minimal diversity and numerosity requirements set forth in 28 U.S.C. § 1332(d)(2)." United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co., 602 F.3d 1087, 1090-91 (9th Cir. 2010); see also Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1195 (9th Cir. 2015) ("A CAFA-covered class action may be removed to federal court, subject to more liberalized jurisdictional requirements[.]"). Under CAFA, "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive

1  of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a
2  citizen of a State different from any defendant[.]"  28 U.S.C. § 1332(a), (d)(2).
3       "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to
4  facilitate adjudication of certain class actions in federal court."  Dart Cherokee Basin Operating
5  Co., LLC v. Owens, 574 U.S. 81, 89, 135 S.Ct. 547, 554 (2014).  Indeed, "Congress intended
6  CAFA to be interpreted expansively."  Ibarra, 775 F.3d at 1197.

## DISCUSSION

8       Plaintiff contends that defendants have not shown, by a preponderance of the evidence,
9  that the amount-in-controversy exceeds the $5 million CAFA threshold, and that diversity
10 jurisdiction therefore does not exist.  (See Dkt. 36, Motion at 1).  Defendants respond that "the
11 amount in controversy for Plaintiff's waiting time penalty claims, wage statement claims, and
12 attorney's fees for those claims is well over $5 million," satisfying CAFA's amount-in-controversy
13 requirement.  (See Dkt. 39, Defendants' Opposition to Plaintiff's Motion to Remand ("Opp.") at 1).
14      "A defendant's amount in controversy allegation is normally accepted when invoking CAFA
15 jurisdiction, unless it is 'contested by the plaintiff or questioned by the court.'"  Jauregui v.
16 Roadrunner Transp. Servs., Inc., 28 F.4th 989, 992 (9th Cir. 2022) (quoting Dart Cherokee, 574
17 U.S. at 87, 135 S.Ct. at 553).  "[T]he plaintiff can contest the amount in controversy by making
18 either a 'facial' or 'factual' attack on the defendant's jurisdictional allegations. . . .  When a plaintiff
19 mounts a factual attack, the burden is on the defendant to show, by a preponderance of the
20 evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold."  Harris
21 v. KM Indus., Inc., 980 F.3d 694, 699 (9th Cir. 2020) (internal citations omitted).  "The parties may
22 submit evidence outside the complaint, including affidavits or declarations, or other
23 summary-judgment-type evidence relevant to the amount in controversy at the time of removal."
24 Ibarra, 775 F.3d at 1197 (internal quotation marks omitted).  "CAFA's requirements are to be
25 tested by consideration of real evidence and the reality of what is at stake in the litigation, using
26 reasonable assumptions underlying the defendant's theory of damages exposure."  Id. at 1198.
27      The amount-in-controversy "does not mean likely or probable liability; rather, it refers to
28 possible liability."  Greene v. Harley-Davidson, Inc., 965 F.3d 767, 772 (9th Cir. 2020).  It "reflects

1  the <u>maximum</u> recovery the plaintiff could reasonably recover." <u>Arias v. Residence Inn by Marriott</u>,
2  936 F.3d 920, 927 (9th Cir. 2019) (emphasis in original).  "[W]hen the defendant relies on a chain
3  of reasoning that includes assumptions to satisfy its burden of proof, the chain of reasoning and
4  its underlying assumptions must be reasonable ones." <u>LaCross v. Knight Transp. Inc.</u>, 775 F.3d
5  1200, 1202 (9th Cir. 2015).  The "assumptions cannot be pulled from thin air[.]" <u>Ibarra</u>, 775 F.3d
6  at 1199.

7      The "burden of demonstrating the reasonableness of the assumptions on which the
8  calculation of the amount in controversy [is] based remain[s] at all times with [the defendant]."
9  <u>Harris</u>, 980 F.3d at 701.  However, a defendant does not need to "provide evidence proving the
10 assumptions correct[,]" as this would be akin to "impos[ing] a requirement that [the defendant]
11 prove it actually violated the law at the assumed rate." <u>Arias</u>, 936 F.3d at 927.  "An assumption
12 may be reasonable if it is founded on the allegations of the complaint." <u>Id.</u> at 925.

13     In the NOR, defendants allege that "[t]here are more than 3,500 employees encompassed
14 by Plaintiff's waiting time penalty alone." (Dkt. 1, NOR at ¶ 11).  Based on an assumed violation
15 rate of 100% for the wage statement violations and waiting time penalties, and an attorney's fees
16 award of 25%, defendants initially estimated the amount-in-controversy to be more than $60
17 million. (<u>See</u> <u>id.</u> at ¶¶ 28, 30, 36, 37).  Defendants submitted a declaration from Norvy Contreras,
18 a "Human Resource Business Partner" at Northrop Grumman, which provided:  (1) an estimate
19 of the number of non-exempt employees who resigned, retired, or were terminated during the
20 class period; (2) the average hourly rate of pay for those employees; (3) the estimated number of
21 non-exempt employees employed by Northrop Grumman in California between June 26, 2023,
22 and June 26, 2024; and (4) the estimated number of pay periods worked by those employees
23 between June 26, 2023, and June 26, 2024. (<u>See</u> Dkt. 1-1, First Declaration of Norvy Contreras
24 ("First Contreras Decl.") at ¶ 1).

25     Plaintiff contends that defendants' calculations are unreasonable, and based on speculative
26 assumptions or insufficient evidence.  Specifically, plaintiff challenges defendants' use of a 100%
27 violation rate for their calculations.  (<u>See</u> Dkt. 36, Motion at 1-2, 6-7, 12-16).  Plaintiff also
28 contends that, notwithstanding the First Contreras Decl.,  defendants failed to provide reliable

evidence justifying their assumptions about: (1) class members' average hourly rate of pay; (2) the total number of putative class members; (3) the total number of pay periods worked during the class period; (4) the average number of hours worked per day by class members; and (5) the basis for the assumed attorneys' fees. (See id. at 8, 9 & n. 1, 14-17). Plaintiff dismisses the First Contreras Decl. as "bare-bones, conclusory assertions of fact [that] lack any proper evidentiary foundation and cannot be relied on to establish the reasonableness of Defendant's amount-in-controversy calculations." (Id. at 8).

In response to plaintiff's Motion, defendants submitted a second declaration from Contreras. (See Dkt. 39-1, Second Declaration of Norvy Contreras ("Second Contreras Decl.")). The Second Contreras Decl. provided: (1) more detailed descriptions of the information covered in the First Contreras Decl.; (2) the specific number of non-exempt employees who retired, resigned, or were terminated between June 25, 2021, and April 27, 2024 (60 days before June 26, 2024), and (3) descriptions of the specific documents, reports, programs, systems, and data relied upon by Contreras. (See Dkt. 39-1, Second Contreras Decl. at ¶ 9). While defendants maintain that the use of 100% violation rates is reasonable, they also argue that both the waiting time penalty claim and wage statement claim independently place over $5 million in controversy when using a 25% violation rate. (See Dkt. 39, Opp. at 7, 14). Defendants additionally assert that even if a five-day penalty were used for calculating the waiting-time penalty, rather than the maximum 30-day penalty, defendants would still satisfy the CAFA threshold by adding together the waiting-time penalty claim, the wage statement claim, and attorney's fees calculated using the standard 25% benchmark. (See Dkt. 39, Opp. at 9, 14). Based on these estimates, defendants claim that the recalculated amount equals $9,903,708.[2] (See Dkt. 39, Opp. at 16).

---

[2] The waiting-time penalty claim assumes a 25% violation rate and 5-day penalties: ($166.75 daily rate * 5 days * 131 employees) + ($266.80 daily rate * 5 days * 744 employees) = $109,221.25 + $992,496 = $1,101,717.25. (See Dkt. 39, Opp. at 7, 9, 16). The wage statement claim likewise assumes a 25% violation rate: [(10,700 initial pay periods * $50) + (267,500 subsequent pay periods * $100)] * 0.25 = $27,285,000 *0.25 = $6,821,250.00. (See Dkt. 39, Opp. at 13-14, 16). Defendants then add 25% of each claim for attorney fees. For the waiting time penalty claims, this amounts to $1,101,717 * 1.25 = $1,377,146, or attorney fees of $275,429.25. For the wage statement claim, this amounts to $6,821,250 * 1.25 = $8,526,562, or attorney fees

Plaintiff asserts that the Second Contreras Decl. "fails to identify necessary metrics to establish reasonable assumptions for violation rates," and that defendants therefore continue to lack sufficient evidence to justify their lowered violation rate assumptions. (See Dkt. 42, Reply at 3). But, as the Ninth Circuit has recognized, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate – really, the alleged violation rate – because the defendant likely believes the real rate is zero and thus that the evidence does not exist." Perez v. Rose Hills Co., 131 F.4th 804, 808 (9th Cir. 2025) (emphasis in original). Instead, "a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint." Id. The district court's job is to determine whether the defendant's assumed violation rate is a "reasonable interpretation of the complaint." Id. at 809. If the defendant's "violation rate cannot be justified by the allegations in the complaint[,]" then the defendant must provide competent evidence to support its assumptions. See id.

Here, plaintiff's allegations that defendants committed alleged wage and hour violations "at times," (see Dkt. 1-5, Compl. at ¶¶ 14-21), are sufficient for defendants to assume a 25% violation rate, and a 5-day waiting time penalty.[3] See Cadriel v. Wolfspeed, Inc., 2024 WL 5055547, *5 (N.D. Cal. 2024) (collecting cases and noting that "courts have found that it is reasonable to assume a violation rate of around 20% based on the use of 'at times'"). Defendants' assumptions are "tethered . . . to the language in the complaint – namely, that [they] ha[ve] committed the alleged violations 'at times[.]'" Perez, 131 F.4th at 809; see also Arias, 936 F.3d at 927 (noting the defendant is not required to prove the "assumptions made part of the defendant's chain of reasoning" or that "it actually violated the law at the assumed rate"). Plaintiff's argument that using a 20% violation rate instead "carries just as much evidentiary weight as that which Defendant has

---

of $1,705,312.50. (See Dkt. 39, Opp. at 16). Together, then, the recalculated claims jointly amount to: $8,526,562 + $1,377,146 = $9,903,708.

[3] Beyond identifying an assumed violation rate, defendants have presented additional evidence to support their calculations. Contreras's declarations provide the (1) number of class members during the relevant period; (2) average hourly wage rates; (3) number of shifts averaging either five or eight hours per day; (4) and number of pay periods. (See Dkt. 1-1, First Contreras Decl. at 1); (Dkt. 39-1, Second Contreras Decl. at 4-5).

6

proposed [25%] – that is to say, none at all," (see Dkt. 42, Reply at 7), is unpersuasive.  Although "it may be true that the phrase 'at times' could support a lower violation rate as easily as it could support the violation rate that [defendant] assumed," "an assumption is not unreasonable simply because another equally valid assumption may exist."  Perez, 131 F.4th at 809-10; see, e.g., Jauregui, 28 F.4th at 995 (reversing district court where CAFA's "amount in controversy would be met using any of the plausible figures").  In short, the court is persuaded that the Contreras declarations, coupled with the allegations in the Complaint, are sufficient to support defendants' amount in controversy calculations.  See, e.g., La Grow v. JetBlue Airways Corp., 2024 WL 3291589, *7 (C.D. Cal. 2024) (finding similar declaration sufficient to support violation rate assumptions and calculations); Yorba v. Gov't Emps. Ins. Co., 2024 WL 3442416, *2 (S.D. Cal. 2024) ("[A] declaration from a knowledgeable employee along with allegations in the complaint can satisfy the defendant's burden, even without other evidence such as payroll or timekeeping records.").

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT plaintiff's Motion to Remand **(Document No. 36)** is **denied**.[4]

Dated this 14th day of July, 2025.

/s/
Fernando M. Olguin
United States District Judge

---

[4] Given the court's conclusion relating to CAFA jurisdiction, it need not consider the parties' arguments regarding equitable jurisdiction.  (See Dkt. 36, Motion at 18-19); (Dkt. 39, Opp. at 16-18).